UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY KACHINSKI,

        Plaintiff,

v.

CITY OF TAYLOR, and JOHN BLAIR
*in his official capacity as Chief of*
*Police of the City of Taylor*,

        Defendants.
_____/

Case No. 2:25-cv-11975

Honorable Susan K. DeClercq
United States District Judge

**ORDER DISMISSING WITHOUT PREJUDICE PLAINTIFF'S AMENDED COMPLAINT (ECF No. 7), DENYING AS MOOT PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER (ECF No. 4), AND DENYING AS MOOT DEFENDANT BLAIR'S MOTION TO DISMISS (ECF No. 13)**

On July 1, 2025, Plaintiff Timothy Kachinski filed this lawsuit, alleging that the City of Taylor and its chief of police, John Blair, committed six constitutional violations by entering into an agreement with the federal government that authorizes Taylor Police Department officers to carry out certain immigration enforcement duties under the direction and supervision of Immigration and Customs Enforcement (ICE).

But as explained below, though Kachinski's concerns about the agreement may be valid, he has not demonstrated an injury in fact sufficient to give him standing to bring this case. Accordingly, it must be dismissed without prejudice.

# I. BACKGROUND

Before proceeding to the merits of Kachinski's allegations and claims, some background on the types of cooperation agreements at issue here is useful.

**A. The Immigration and Nationality Act and the 287(g) Program**

In 1996, Congress added Section 287(g) to the Immigration and Nationality Act, now codified in 8 U.S.C. § 1357(g). Section 287(g) authorizes ICE to delegate to state and local law-enforcement officers the authority to perform specified immigration-officer functions under ICE's direction and oversight. This is accomplished by the federal government entering into "formal written agreements, known as Memoranda of Agreement (MOA), with state or local law enforcement agencies." Ben Levey, *Disrupting the Jail-to-Deportation Pipeline in Wisconsin*, 2023 WIS. L. REV. 2027, 2056 (2023); *see also* 8 U.S.C. § 1357(g)(1).

There are three types of 287(g) programs utilized by ICE: (1) the jail-enforcement model; (2) the task-force model; and (3) the warrant-service-officer program. *See* U.S. Immigration and Customs Enforcement, *Delegation of Immigration Authority Section 287(g) Immigration and Nationality* Act, https://www.ice.gov/identify-and-arrest/287g [https://perma.cc/E3B9-LVE6]. The jail-enforcement model "is designed to identify and process removable aliens—with criminal or pending criminal charges—who are arrested by state or local law enforcement agencies." *Id.* The task-force model "serves as a force multiplier for

law enforcement agencies to enforce limited immigration authority with ICE oversight during their routine police duties." *Id.* And the warrant-service-officer program "allows ICE to train, certify and authorize state and local law enforcement officers to serve and execute administrative warrants on aliens in their agency's jail." *Id.*

Proponents of the 287(g) program say it enables the government to more efficiently enforce immigration law and remove undocumented immigrants. *See* Michael J. Larson, *The Right U.S. Immigration Enforcement Solution: "Make Haste Slowly,"* 66 U. MIAMI L. REV. 807, 810 (2012) (arguing that "[t]he long-term answer to illegal immigration is a uniform federal policy centered on intense Federal, State, and local enforcement."). But opponents of the program say implementation of the 287(g) program results in "widespread racial profiling," "threaten[s] community safety and hinder[s] community policing." AMERICAN IMMIGRATION COUNCIL, *The 287(g) Program: An Overview* (July 8, 2021), https://www.americanimmigrationcouncil.org/fact-sheet/287g-program-immigration/ [https://perma.cc/7DLL-Q6EK]. What's more, there is ample debate about whether 287(g) agreements are even permissible under some state and local laws. *See generally* Levey, *supra* (arguing 287(g) agreements violate Wisconsin state law and surveying interplay between state law and 287(g) agreements in several other states). Indeed, some states have enacted policies or legislation that explicitly prevent or limit local law-enforcement agencies

from entering into these kinds of agreements. *See* THE LEADERSHIP CONFERENCE ON CIVIL AND HUMAN RIGHTS, *287(g) is Impacting Communities Across the United States. Here's what You Need to Know.* (June 24, 2025), https://civilrights.org/resource/the-287g-program/# [https://perma.cc/9CF2-KCJV]. But other states have enacted or proposed state legislation requiring local law-enforcement agencies to enter into 287(g) agreements with ICE. *See Delegation of Immigration Authority, supra.*

Although the program has existed for almost 30 years, it has recently again become the subject of debate, as the number of local agencies participating in the 287(g) program has ballooned under the Trump administration.[1] Indeed, as of July 25, 2025, there are 865 agreements under 287(g) in effect throughout the nation. *See Delegation of Immigration Authority, supra.*

Since April 2025, three local law-enforcement agencies in Michigan have entered into task-force-model 287(g) agreements. *Id.* These agencies and their leaders have "endured harsh criticism" for entering such agreements, causing 12

---

[1] Indeed, on January 20, 2025—Donald Trump's first day in office—he "issued Executive Order 14159, *Protecting the American People Against Invasion*. This [executive order] requires and directs ICE to authorize State and local law enforcement officials, as the Secretary of Homeland Security determines are qualified and appropriate, under section 287(g) of the Immigration and Nationality Act to the maximum extent permitted by law." U.S. Immigration and Customs Enforcement, *Delegation of Immigration Authority Section 287(g) Immigration and Nationality* Act, https://www.ice.gov/identify-and-arrest/287g [https://perma.cc/E3B9-LVE6].

- 4 -

Republican state lawmakers in Michigan to introduce a House Resolution to "support the 287(g) program." *Rep. DeSana defends 287(g) program, supports Downriver law enforcement*, MICH. HOUSE REPUBLICANS (June 24, 2025), https://gophouse.org/posts/rep-desana-defends-287g-program-supports-downriver-law-enforcement [https://perma.cc/S6CP-SD4J]; *see also* H.R. 128, 103d Leg., Reg. Sess. (Mich. 2025).

### B. City of Taylor's 287(g) Agreement and Kachinski's Lawsuit

As relevant to this case, on April 28, 2025, the Taylor Police Department entered into a task-force-model 287(g) agreement with the federal government. *See* Niraj Warikoo, *Taylor Police Department is first agency in metro Detroit to sign agreement with ICE*, DETROIT FREE PRESS (May 19, 2025) https://www.freep.com/story/news/local/michigan/wayne/2025/05/19/taylor-police-department-ice-agreement/83642450007/ [https://perma.cc/V5ZN-6DSX].

Just over two months later, Plaintiff Timothy Kachinski—a citizen of the United States and resident of Taylor, Michigan—sued the City of Taylor and its chief of police, John Blair, for entering into that 287(g) agreement. *See* ECF No. 1. One week later, Plaintiff filed an amended complaint, which is the operative complaint at this juncture. *See* ECF No. 7.

Plaintiff alleges that, by signing the 287(g) agreement, both the City and Blair committed six constitutional violations. *See* ECF No. 7. Specifically, Kachinski brings the following claims:

| Count | Allegation |
|---|---|
| I | Violation of the Procedural Due Process Clause of the Fourteenth Amendment |
| II | Violation of the Substantive Due Process Clause of Fourteenth Amendment |
| III | Violation of the Equal Protection Clause of the Fourteenth Amendment |
| IV | Violations of Fourth and Fifth Amendments |
| V | Violations of Structural Federalism, the Tenth Amendment, and the Anti-Commandeering Doctrine |
| VI | Violation of Eighth Amendment |

*Id.* at PageID.111–162.

Kachinski also seeks a temporary restraining order (TRO) to enjoin Defendants from implementing, enforcing, or participating in the 287(g) agreement. ECF No. 4 at PageID.91. On July 24, 2025, Defendant Blair filed a motion to dismiss Plaintiff's claims against him for insufficient service. ECF No. 13.

But before proceeding to analyze the merits of Kachinski's request for a TRO, this Court must first determine whether Kachinski has demonstrated Article III standing. *See Cato Inst. v. Cardona*, 689 F. Supp. 3d 456, 464 (E.D. Mich. 2023), *aff'd sub nom. Mackinac Ctr. for Pub. Pol'y v. Cardona*, 102 F.4th 343 (6th Cir. 2024).

## II. LEGAL STANDARD

Article III of the Constitution prevents litigants from using the judiciary to "usurp the powers of the political branches," by confining the federal judicial power to the resolution of "Cases" and "Controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). And to find that a case or controversy exists, a plaintiff must show that he or she has standing—that is, a personal stake in the case. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *Raines v. Byrd*, 521 U.S. 811, 819 (1997); *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 38 (1976). Indeed, standing "is the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498, (1975).

To demonstrate Article III standing, a plaintiff must establish the following three elements:

> (1) [the plaintiff] has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;
>
> (2) the injury is fairly traceable to the challenged action of the defendant; and
>
> (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581 (6th Cir. 2016) (quoting *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606–07 (6th Cir. 2007)).

It is the plaintiff's burden to establish each of these three elements. *Simpson-Vlach v. Michigan Dep't of Educ.*, 616 F. Supp. 3d 711, 726 (E.D. Mich. 2022), *aff'd*, No. 22-1724, 2023 WL 3347497 (6th Cir. May 10, 2023); *Buchholz v. Meyer Njus Tanick*, 946 F.3d 855, 861 (6th Cir. 2020). Indeed, each of the three requirements is "an indispensable part of the plaintiff's case" and "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Midwest Media Prop., L.L.C. v. Symmes Twp.*, 503 F.3d 456, 461 (6th Cir. 2007) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

To satisfy this burden at the pleading stage, the plaintiff must "clearly allege facts that demonstrate each element of standing." *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 386 (6th Cir. 2020) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). General or conclusory allegations will not do. *See Simpson-Vlach*, 616 F. Supp 3d at 726; *Ass'n of Am. Physicians & Surgeons v. U.S. Food & Drug Admin.*, 13 F.4th 531, 544 (6th Cir. 2021).

### III. ANALYSIS

Kachinski's attempt to demonstrate standing begins and ends with an analysis of the first element: injury in fact.

To satisfy "the '[f]irst and foremost' of standing's three elements," a plaintiff must show the he or she suffered an injury in fact. *Spokeo*, 578 U.S. at 339 (2016), as revised (May 24, 2016) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S.

83, 103 (1998)). A plaintiff establishes an injury in fact by showing that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. "Although standing can exist even when the alleged injury is difficult to prove or measure, the injury must affect the plaintiff in a personal and individual way." *Cato Inst.*, 689 F. Supp. 3d at 463 (collecting cases).

Here, Kachinski has not shown injury in fact. True, he is a concerned citizen of Taylor who is worried about the potential disparate impact of a 287(g) agreement in his community. *See* ECF No. 7 at PageID.102–04. And he asserts his Polish last name, coupled with a speech impediment, puts him "at elevated risk of misidentification" by officers acting under ICE direction to detain immigrants who entered the country illegally. *Id.* at PageID.102.

But the mere hypothetical possibility that Kachinski *could* be misidentified and detained is no more than a hypothetical risk of "harm that affects the entire citizenry," which is "insufficient" to establish an injury in fact. *Cato Inst.*, 689 F. Supp. 3d at 463 (citing *Simpson-Vlach*, 616 F. Supp. 3d at 724). And simply being a concerned citizen who disagrees with municipal action—absent a "personal and individual" harm—is not enough to create standing to challenge such action. *Id.* (collecting cases). At bottom, Kachinski's lack of concrete, particularized, and actual or imminent injury is fatal to his attempt to show he has standing to bring this case.

Nevertheless, Kachinski argues that he has standing because "[f]ederal courts have repeatedly enjoined local enforcement of 287(g) agreements when such participation produced unconstitutional effects," pointing to two specific cases: *Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) and *Roy v. Cnty. of Los Angeles*, No. CV-12-09012-ABF-FMX, 2018 WL 914773 (C.D. Cal. Feb. 7, 2018). ECF No. 7 at PageID.106.

These cases highlight the very problem with Kachinski's claims here: in each of these cases, the plaintiffs suffered an actual injury, as they were *actually* stopped, detained, searched, or questioned by officers. In *Melendres*, all five plaintiffs were subject to traffic stops by a police officer. 695 F.3d at 995. And in *Roy*, the plaintiffs were detained by the Los Angeles County Sheriff's Department and denied bail or release from custody because of an immigration hold. 2018 WL 914773, at *6. Here, Kachinski has not been stopped, detained, searched, or questioned by any officer as a result the Taylor Police Department's 827(g) agreement. *See generally* ECF No. 7. Thus, he has not alleged an injury (let alone traceability and redressability), so he lacks standing and his case must be dismissed.

In sum, although the recent proliferation of 287(g) agreements raises important concerns regarding not only their impact on communities, but also the legal authority of local agencies to enter into and execute such agreements under

state and municipal law,[2] Plaintiff has not demonstrated that *he personally* has been injured by the Taylor Police Department's entry into such an agreement. Accordingly, he lacks standing, and this case must be dismissed without prejudice.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Plaintiff's Amended Complaint, ECF No. 7, is **DISMISSED WITHOUT PREJUDICE.**

**Further, it is ORDERED** that Plaintiff's Motion for a Temporary Restraining Order, ECF No. 4, is **DENIED AS MOOT**.

Further, it is **ORDERED** that Defendant Blair's Motion to Dismiss, ECF No. 13, is **DENIED AS MOOT**.

**This is a final order and closes the above-captioned case.**

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: July 25, 2025

---

[2] *See Renteria-Villegas v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:11-00218, 2011 WL 4048523, at *11 (M.D. Tenn. Sept. 12, 2011), *certified question answered*, 382 S.W.3d 318 (Tenn. 2012) (recognizing that whether a 287(g) agreement violates state law or a local charter is a question of state law).